UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATALIE AGUREYEV and DARYA IGAMBERDIEV, | |
| Plaintiffs, | CIVIL ACTION NO.: 17 Civ. 7336 (SLC) |
| -v- | OPINION & ORDER GRANTING MOTION <u>FOR DEFAULT JUDGMENT</u> |
| H.K. SECOND AVE. RESTAURANT, INC., SHAHEEN KHAN, and MAHA KHONDOKER, | |
| Defendants. | |

**SARAH L. CAVE,** United States Magistrate Judge.

## I.  <u>INTRODUCTION</u>

In this action under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 <u>et seq.</u>, and

New York Labor Law ("NYLL") § 190 <u>et seq.</u>, Plaintiffs Natalie Agureyev ("Agureyev") and Darya

Igamberdiev ("Igamberdiev," together with Agureyev, "Plaintiffs"), move for default judgment

(the "Motion") (ECF No. 74), seeking payment of unpaid wages and related relief from

Defendants H.K. Second Ave. Restaurant, Inc. ("HK"), and Shaheen Khan ("Khan," together with

HK, "Defendants").   (ECF No. 1).[1]  Plaintiffs allege that, when they worked at Defendants'

restaurant, Bait & Hook (the "Restaurant") during 2015, Defendants compensated them solely in

customer tips and did not pay them the applicable minimum, overtime, and spread-of-hours

wages to which they were entitled.  (ECF No. 75 at 2; <u>see</u> ECF No. 1 ¶¶ 2–4, 22–23, 25, 29–30,

32).

---

1. Although the Complaint also names and the caption also includes as a Defendant Maha Khondoker, Plaintiffs do not mention Khondoker in the Motion or otherwise indicate that they are seeking relief as against Khondoker, nor does the Certificate of Default apply to Khondoker.  Accordingly, the Court finds that Plaintiffs have abandoned their claims against Khondoker, against whom judgment shall not be entered and as to whom Plaintiffs' claims are dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b).

Defendants are now in default, and Plaintiffs filed the Motion, to which Defendants have failed to respond.

For the reasons that follow, Plaintiffs' Motion is GRANTED and Plaintiffs are awarded judgment against Defendants in the total amount of $35,906.34, comprised of the following:

(1) Agureyev is awarded damages in the amount of $4,508.96, comprised of: (i) $1,386.88 in unpaid minimum wages; (ii) $164.06 in unpaid overtime wages; (iii) $8.75 in unpaid spread-of-hours wages; (iv) $1,559.69 in liquidated damages; (v) $1,050.00 in statutory damages, and (vi) $339.58 in prejudgment interest;

(2) Igamberediev is awarded damages in the amount of $12,117.38, comprised of: (i) $4,145.40 in unpaid minimum wages; (ii) $35.00 in unpaid spread-of-hours wages; (iii) $4,180.40 in liquidated damages; (iv) $2,900.00 in statutory damages, and (v) $856.58 in prejudgment interest; and

(3) $19,280 in attorneys' fees.

## II. <u>BACKGROUND</u>

### A.  <u>Factual Background</u>

Plaintiffs allege that they worked as waitresses at Defendants' Restaurant, located in Manhattan.  (ECF No. 1 ¶ 1).  From April 10, 2015 through May 15, 2015, Agureyev worked shifts from 4:00 p.m. until 1:00 a.m., for a total of 30 to 44 hours per week.  (ECF No. 1 ¶¶ 22–24; ECF No. 75-3 ¶¶ 5, 7).  During Agureyev's employment, she was compensated solely in customer tips, and Defendants did not pay her any wages.  (ECF No. 1 ¶ 24; ECF No. 75-3 ¶ 8).  In addition, she was not paid for the first two weeks during which she was "in training."  (ECF No. 1 ¶ 26; ECF No. 75-3 ¶ 9).  The W-2 form that Defendants provided Agureyev indicated her total wages as

$5,600.00, when in fact, she had received less than half that amount, only in tips, during her employment.  (ECF No. 1 ¶ 27; ECF No 75-3 ¶ 10).  She alleges that she paid federal and state income taxes on wages she did not receive.  (ECF No. 1 ¶ 28; ECF No. 75-3 ¶ 11).

From March 2015 through September 2015, Igamberdiev also worked as a waitress at the Restaurant on shifts from 3:00 p.m. to 3:00 a.m., three to five days per week, for a total of 24 to 50 hours per week.  (ECF No. 1 ¶¶ 29, 31; ECF No. 75-4 ¶¶ 5–7).  Like Agureyev, Igamberdiev was only compensated in customer tips, and Defendants did not pay her any wages.  (ECF No. 1 ¶ 32; ECF No. 75-4 ¶ 8).

Plaintiffs allege that Khan was a principal, director, and/or officer of HK, which he actively controlled and managed, such that both Khan and HK were their "employer" for purposes of the FLSA and the NYLL.  (ECF No. 1 ¶¶ 11–12; ECF No. 75-3 ¶ 12; ECF No. 75-4 ¶ 9).

Plaintiffs allege that Defendants committed several violations of FLSA and the NYLL: (i) Plaintiffs were not subject to, nor did Defendants provide them notice of, a tip credit against their wages; (ii) Plaintiffs were entitled to but Defendants did not pay them a minimum wage of $8.75 per hour; (iii) Plaintiffs were entitled to but Defendants did not pay them one-and-one-half times the minimum wage rate for the hours they worked in excess of 40 hours per workweek; (iv) Plaintiffs were entitled to but Defendants did not pay them an additional hours pay at minimum wage for every day they worked a spread-of-hours more than ten (10) hours; and (v) Plaintiffs were entitled to but Defendants did not provide wage statements indicating their regular and overtime rates of pay.  (ECF No. 1 ¶¶ 36–47).

B. **Procedural Background**

On September 26, 2017, Plaintiffs filed their Complaint, seeking to assert claims on behalf of themselves as well as putative class and collective actions.  (ECF No. 1).  On December 14, 2017, following a scheduling conference, the Honorable John G. Koeltl entered a case management and scheduling order that set the close of fact discovery as March 20, 2018.  (ECF No. 16).  The same day, the parties consented to jurisdiction by a United States Magistrate Judge, at the time, the Honorable Henry B. Pitman.  (ECF No. 17).  On January 19, 2018, Defendants moved to dismiss the Complaint, which Judge Pitman denied.  (ECF Nos. 20, 23).  On September 26, 2018, Defendants filed their Answer to the Complaint, and the parties proceeded to discovery.  (ECF No. 24).  On January 9, 2019, the Honorable Kevin Nathaniel Fox conducted a settlement conference, which did not result in a settlement.  (ECF minute entry Jan. 9, 2019).  After Judge Pitman resolved several discovery disputes, the parties prepared for a bench trial.  (ECF Nos. 33–36, 38–39).  In July 2019, just before the final pre-trial conference, Defendants notified Judge Pitman that they would be imminently filing for bankruptcy (ECF No. 40), in response to which Judge Pitman stayed the action "pending further Order of the Court."  (ECF No. 41).

On October 2, 2019, the action was reassigned to the undersigned.  (ECF minute entry Oct. 2, 2019).  On October 11, 2019, the Court ordered the parties to file a joint status report as to the details of Defendants' bankruptcy filings.  (ECF No. 42).  On October 25, 2019, Defendants advised the Court that, notwithstanding their representation to Judge Pitman of their imminent bankruptcy filings in July 2019, they had not yet done so.  (ECF No. 43).  Accordingly, the Court ordered the parties to file a further status report by December 2, 2019, warning that if

Defendants had not filed for bankruptcy by that time, the Court might lift the stay and issue a scheduling order. (ECF No. 44). The parties failed to file a joint status report by the deadline, and on December 20, 2019, the Court ordered Plaintiffs to show cause why the action should not be dismissed for failure to prosecute. (ECF No. 46). Plaintiffs timely responded to the Court's order, and the Court again ordered Defendants to file a status report as to their bankruptcy filings. (ECF Nos. 47–48). After Defendants failed to submit a timely status report, the Court scheduled a status conference, warning Defendants of the risk of sanctions should they fail to appear. (ECF No. 49). After one adjournment, at Defendants' request, the Court held a status conference on February 12, 2020, following which the Court entered a final pretrial order governing the conduct of the bench trial to be held on June 29, 2020. (ECF Nos. 50–55).

On June 9, 2020, the Court held what was intended to be the final pretrial conference, during which Defendants' counsel indicated his intent to file a motion withdraw his appearance, such that the Court adjourned the trial date sine die pending the appearance of new counsel for Defendants. (ECF minute entry June 9, 2020, ECF No. 64). On June 22, 2020, the Court granted Defendants' counsel's motion to withdraw, and granted Defendants 30 days to retain new counsel, warning HK that, as a corporation, it was required to appear through counsel. (ECF No. 66). The Court also warned Defendants that, should they fail to respond to the Court's order by July 22, 2020, Plaintiffs could request a certificate of default from the Clerk of the Court in accordance with Federal Rule of Civil Procedure 55. (Id.) Defendants failed to respond or appear, and on July 31, 2020, the Court ordered Plaintiffs to request a certificate of default. (ECF No. 67). Plaintiffs did so, and on August 5, 2020, the Clerk issued the Certificate of Default as to HK and

Khan.  (ECF Nos. 71–73).  On August 14, 2020, Plaintiffs filed the Motion, to which Defendants have not responded.  (ECF Nos. 74–75).

### III.  DISCUSSION

No party has requested a hearing on the issue of damages, and Defendants have not submitted any written materials.  Plaintiffs also urge the Court to accept their affidavits and other documentary support for damages in lieu of an in-person inquest.  (ECF No. 75 at 3–4).  Accordingly, the Court has conducted the inquest based solely on the materials Plaintiffs have submitted in support of their request for damages.  See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) ("Rule 55(b)(2) of the Federal Rules of Civil Procedure . . . allows but does not require the district judge to conduct a hearing."); Perez v. 50 Food Corp., No. 17 Civ. 7837 (AT) (BCM), 2019 WL 7403983, at *3 (S.D.N.Y. Dec. 4, 2019), adopted by, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020); Fed. R. Civ. P. 55(b)(2).

### A.  Legal Standards

#### 1.  Determining liability

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants."  Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015).  The Court must determine "whether the allegations in the complaint establish the

defendants' liability as a matter of law." Id. If the Court finds that the well-pleaded allegations establish liability, the Court then analyzes "whether plaintiff has provided adequate support for [his requested] relief." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." Perez, 2019 WL 7403983, at *4.

### 2.  Determining damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), adopted by 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012). The evidence the plaintiff submits must be admissible. Poulos v. City of New York, No. 14 Civ. 03023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence"). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. Fustock v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (court may determine

appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment") (internal citation omitted).

In a FLSA case such as this, where Defendants have failed to come forward in response to the Motion with any employment records showing Plaintiffs' hours worked and wages paid, the Court may credit Plaintiffs' "recollections regarding their hours and pay in conducting [the] inquest." Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), as amended Mar. 29, 2018.  The Court "must ensure that [their] approximations and estimates are reasonable and appropriate."  Id.  Ultimately, the default judgment the Court enters "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (limiting damages to those specified in demand in complaint "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) (holding that plaintiff could not recover damages for unalleged claims against defaulted defendant).

**B.  Jurisdiction and Venue**

The Court has subject matter jurisdictions over Plaintiffs' claims.  They sue under a federal statute — the FLSA — such that subject matter jurisdiction lies under 28 U.S.C. § 1331.  The Court may exercise supplemental jurisdiction over their NYLL claims because they arise out of the same facts and circumstances as his FLSA claims.  See Perez, 2019 WL 7403983, at *5.

The Court has personal jurisdiction over Defendants, which is "a necessary prerequisite to entry of a default judgment." Reilly v. Plot Commerce, No. 15 Civ. 05118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016), adopted by, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (quoting Sheldon v. Plot Commerce, No. 15 Civ. 5885 (CBA) (CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016)).  Defendants answered the Complaint, participated in some discovery, commenced preparation for trial, and never moved for dismissal under Federal Rule of Civil Procedure 12(b)(2), thus waiving any argument that the Court lacked personal jurisdiction.  See Fed. R. Civ. P. 12(h)(1)(B); Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 62 (2d Cir. 1999). Defendants have also waived any objection to venue in this Court.  See Fed. R. Civ. P. 12(b)(3), 12(h)(1)(B).

### C. Liability

To state a claim for wages under the FLSA, a plaintiff must allege that:  (1) she was the defendant's employee; (2) her work involved interstate activity; and (3) she worked for hours for which she did not receive minimum or overtime wages.  See Tackie v. Keff Enter., Inc., No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).  A wage-and-hour claim under the NYLL involves a similar analysis, "except that the NYLL does not require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales."  Id. at *2 n.2.  To recover overtime compensation, a plaintiff "must allege sufficient factual matter to state a plausible claim that [she] worked compensable overtime in a workweek longer than 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).  To recover spread-of-hours pay, she must also allege that she worked "more than ten hours per day . . . and [was] not paid an

additional hour at the minimum wage rate for days in which [she] worked [ten] or more hours[.]" Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011).

### 1.   Employment relationship

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."   29 U.S.C. § 203(d).   Courts afford the term "employer" "an expansive definition with 'striking breadth.'"   Mondragon v. Keff, 15 Civ. 2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 US. 318, 326 (1992)).   Under the FLSA, "[a]n individual may have multiple 'employers,'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'"   Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defendants were Plaintiffs' "employer" for FLSA purposes, the Court examines the "economic reality" of the working relationship.   Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013).   Courts in the Second Circuit consider four non-exclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."   Id. at 105 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)).   This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]"   Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also broad, see NYLL § 190(3),[2] "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" Mondragon, 2019 WL 2551536, at *7 (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  In the absence of a decision from the New York Court of Appeals answering "the question whether the test for 'employer' status is the same under the FLSA and the NYLL," Camara v. Kenner, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." Hart, 967 F. Supp. 2d at 924 (internal citation omitted).  "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." Martin, 273 F. Supp. 3d at 422.

Plaintiffs allege that Defendants employed them at the Restaurant, and that at all relevant times, they were "employees."  (ECF No. 1 ¶¶ 1, 22, 29; ECF No. 75-3 ¶¶ 5–7; ECF No. 75-4 ¶¶ 5–7).  Plaintiffs also allege that Khan was responsible for hiring and firing, supervising, creating work schedules, and assigning work to Plaintiffs and other employees at the Restaurant.  (ECF No. 1 ¶ 33).  Together, Defendants "maintained control, oversight and authority over the Plaintiffs in the terms and conditions of [their] employment and payment of wages," and therefore, were Plaintiffs' "employer" within the meaning of the FLSA and the NYLL.  (Id. ¶ 35).  Their factual

---

[2] NYLL § 190(3) defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

allegations adequately support the conclusion that Defendants were their employer.  Perez, 2019 WL 7403983, at *6.

Because Defendants were Plaintiffs' employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award to Plaintiffs.  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015) (imposing joint and several liability on defaulting corporate and individual defendants); Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (same).

### 2.  Interstate commerce

Under the FLSA, Plaintiffs must establish that they or their employer was engaged in interstate commerce.  See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); see 29 U.S.C. § 207(a)(1) (employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at "one and one-half times the regular rate at which [they are] employed").

Plaintiffs have plausibly alleged that Defendants were engaged in interstate commerce and had an annual volume of business in excess of $500,000.  (ECF No. 1 ¶ ¶ 75–76).  This meets the threshold for enterprise liability under the FLSA, see 29 U.S.C. § 203(s)(1)(A), and therefore, Plaintiffs have satisfied the interstate commerce element for FLSA liability.  See Mondragon, 2019 WL 2251536, at *9.

### 3.  **Statute of Limitations**

Under the NYLL, the statute of limitations is six years.  See NYLL ¶ 198(3).  Under the FLSA, the statute of limitations is two years, or, if the violations were "willful," three years.  See 29 U.S.C. § 255(a); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988).  A FLSA violation is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited."  Id. at 133.  In support of their contention that Defendants' conduct was willful, Plaintiffs allege that Defendants failed to pay them minimum, overtime, and spread-of-hours wages while "consistently requir[ing] Plaintiffs" to work more than ten hours each workday, and failed to provide them with proper wage statements.  (ECF No. 1 ¶¶ 2, 39–47, 118–19).  This deliberate conduct in disregard of an employer's obligations under the FLSA and the NYLL, as well as the absence of any evidence of attempts to comply with those obligations, demonstrate that Defendants conduct was willful.  See Mondragon, 2019 WL 2251536, at *10 (allegations of failure to pay sufficient wages were adequate to establish willfulness for statute of limitations purposes); Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d, 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005) (explaining that "failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal citations omitted).  In addition, Defendants' default in this case provides "additional support for a finding of willfulness within the meaning of FLSA."  Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 315 (S.D.N.Y. 2014); see Mondragon, 2019 WL 2551536, at *10 (holding that defendant's default and failure to participate supported finding of willfulness).  Therefore, the three-year statute of limitations applies to Plaintiffs' FLSA claims, such that they may recover under the FLSA for the period from September 26, 2014 (three years before they filed their Complaint) until the

date their respective employments ended in 2015.  See Mondragon, 2019 WL 2251536, at *10 (calculating statute of limitations using date complaint was filed).  Because Plaintiffs only seek damages for a period in 2015, it is unnecessary to apply the six-year statute of limitations under the NYLL.

**D.  Damages**

**1.  Unpaid Minimum Wages**

Under both the FLSA and the NYLL, employers must pay employees a statutory minimum wage.  See 29 U.S.C. § 206(a)(1); 12 N.Y.C.R.R. § 146-1.2.  The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, see 29 U.S.C. § 206, or the state minimum wage, if it is greater than the federal minimum wage.  See 29 U.S.C. § 218(a).

Employers may compensate tipped employees at a lower hourly rate by crediting a portion of their tips against the minimum wage.  See 29 U.S.C. § 203(m)(2); 12 N.Y.C.R.R. § 146-1.3(b); see Andrade v. First Ave. Rest. Ltd., No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016) (explaining circumstances under which employers are eligible for tip credit) adopted by, 2016 WL 3948101 (S.D.N.Y. July 19, 2016).  "To be eligible to take a tip credit, however, the employer must satisfy certain prerequisites."  Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015).  These prerequisites include that the employer notify the employee, before the employment begins, "of its intention to include tip income when calculating wages actually paid for minimum wages purposes."  Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010).  The employer bears the burden of proving that it gave this notice.  See Reyes v. Café Cousina Rest. Inc., No. 18 Civ. 1873 (PAE) (DF), 2019 WL 5722475, at *5 (S.D.N.Y. Aug. 27, 2019).  The NYLL

also allows an employer to pay tipped food service workers a lower minimum wage, <u>see</u> NYLL § 652(4), but "only if the employer provides 'to each employee a statement with every payment of wages listing . . . allowances . . . claimed as part of the minimum wage' and 'maintain[s] and preserve[s] for not less than six years weekly payroll records which shall show for each employee . . . allowances . . . claimed as part of the minimum wage.'" <u>Cao</u>, 2010 WL 4159391, at *2 (quoting <u>Padilla v. Manlapaz</u>, 643 F. Supp. 2d 302, 309–10 (E.D.N.Y. 2009)); <u>see</u> 12 N.Y.C.R.R. §§ 146-1.3, -2.2.  Under both the FLSA and the NYLL, the notice must be sufficient to apprise the employee of the tip credit provision and the fact that the employer intends to take the credit as to the employee's wages.  <u>See Reyes</u>, 2019 WL 5722475, at *5; <u>Salinas v. Starjem Rest. Corp.</u>, 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (finding generic FLSA posters to be insufficient notice of tip credit).

The Court finds that Defendants failed to meet these requirements.  Plaintiffs allege, and by their default Defendants have admitted, that they were not provided with notice or otherwise informed that tips would be credited against their wages as required under the FLSA and the NYLL.  (ECF No. 1 ¶¶ 37, 79, 89).  Accordingly, the Court finds that, as to both Plaintiffs, Defendants failed to meet the notice requirements in the FLSA and the NYLL, and are therefore not entitled to any tip credit against the minimum wage.  <u>See Schlalaudek v. Chateau 20th Street LLC</u>, No. 16 Civ. 11 (WHP) (JLC), 2017 WL 729544, at *6–7 (S.D.N.Y. Feb. 24, 2017).

"Because Defendants are not entitled to any tip credit, [they] were required to pay Plaintiffs full minimum wage, rather than the lower minimum wage for tipped workers." <u>Lopez v. Emerald Staffing Inc.</u>, No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *9 (S.D.N.Y. Feb. 26, 2020) (citing <u>Cao</u>, 2010 WL 4159391, at *2).  During the 2015 time-period relevant to this action, the

statutory minimum wage per hour in New York State was $8.75, see NYLL § 652(1), which is higher than the corresponding federal statutory minimum wage at the time.  See 29 U.S.C. § 206(a)(1).  Defendants did not pay Plaintiffs in accordance with this statutory minimum, and accordingly, Plaintiffs are entitled to recover damages for the amount by which they were underpaid.  See Lopez, 2020 WL 915821, at *9; Cao, 2010 WL 4159391, at *2.

### 2. Unpaid overtime

Both the FLSA and the NYLL require an employer to pay an overtime rate of one and one-half times the employee's "regular rate" of pay.  29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  To state an overtime claim, Plaintiffs "must allege only that [they] worked compensable overtime in a workweek longer than forty hours, and that [they were] not properly compensated for that overtime."  Tackie, 2014 WL 4626229, at *3.

There is only one week, April 12 – 18, 2015, in which Agureyev worked more than 40 hours, and Igamberdiev did not work over 40 hours in any week.  (ECF No. 75-2 at 3–5).  Defendants did not pay Agureyev overtime for the hours she worked in excess of 40 hours per week.  (ECF No. 1 ¶ 42; ECF No. 75-3 ¶¶ 7–10, 13).  Thus, Agureyev has adequately stated a claim for unpaid overtime wages under the FLSA and the NYLL.  See Mondragon, 2019 WL 2251536, at *9.

### 3. Spread-of-hours pay

Under the NYLL, employers must pay covered employees one extra hour of compensation, at the basic minimum wage rate, for each day on which they worked more than ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).  Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time

plus time off for meals plus intervals off duty." Id. § 142-2.18.  Before the end of 2010, "this requirement only applied to employees paid at the New York minimum wage and did not ensure additional compensation to employees whose wages sufficiently exceed that floor." Yuquilema v. Manhattan's Hero Corp., No. 13 Civ. 461 (WHP) (JLC), 2014 WL 4207106, at *4 (S.D.N.Y. Aug. 20, 2014) (internal citations omitted).  Effective January 1, 2011 — that is, at all times relevant to Plaintiffs' wages — "the NYLL was amended such that the spread of hours regulations 'apply to all employees in restaurants . . . regardless of a given employee's regular rate of pay.'" Andrade, 2016 WL 3141567, at *4.  An employee may recover spread-of-hours wages in addition to federal and state overtime wages.  See Doo Nam Yang, 427 F. Supp. 2d at 339–41.

Agureyev alleges that she worked more than ten hours on one day, April 15, 2015, and Igamberdiev alleges that she worked more than ten hours on four days, April 1, April 8, April 15, and June 25, 2015; therefore, under current New York law Plaintiffs are entitled to recover spread-of-hours damages for these dates.  (ECF No. 75-2 at 3–5).

### 4.   Liquidated damages

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'" Xochimitl v. Pita Grill of Hell's Kitchen, Inc., 2016 WL 4704917, at *15 (quoting 29 U.S.C. § 216(b)).  "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjecting 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has discretion to deny liquidated damages. Barfield, 537 F.3d at 150.  This burden is "a difficult one," Id. (quoting Herman v. RSR Sec. Servs. Ltd, 172 F.3d 132, 142 (2d Cir. 1999)), and where

"'defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award.'"  Perez Garcia v. Hirakegoma, Inc., No. 17 Civ. 7608 (SLC), 2020 WL 1130765, at *9 (S.D.N.Y. Mar. 9, 2020) (quoting Guaman v. J&C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016)).  A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'"  Kernes v. Global Structures, LLC, No. 15 Civ. 659 (CM) (DF), 2016 WL 880199, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting Angamarca v. Pita Grill 7, Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012)).

The NYLL also authorizes liquidated damages.  See Xochimitl, 2016 WL 4704917, at *15. Effective April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid wages.  Id.; NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL.  See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016); Mondragon, 2019 WL 2551536, at *11.  Courts allow a plaintiff to recover "under the statute that provides the greatest relief."  Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464 at *9 (S.D.N.Y. Nov. 7, 2016) (internal citations omitted).  The NYLL allows for prejudgment interest in addition to liquidated damages, see NYLL § 198(1-a), but the FLSA does not.  See Valdez v. H&S Rest. Operations, Inc., No. 14 Civ. 4701 (SLT) (MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), adopted by, 2016 WL 3087053 (May 27, 2016).  The NYLL therefore provides greater relief to Plaintiffs here, and the Court will apply its liquidated

damages provisions.  See Perez Garcia, 2020 WL 1130765, at *9; Mondragon, 2019 WL 2551536, at *11.

Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL.  See Perez Garcia, 2020 WL 1130765, at *10; Mondragon, 2019 WL 2551536, at *11.  Accordingly, Plaintiffs are entitled to liquidated damages in the amount of 100% of their unpaid wages.

### 5.  Statutory wage statements

The New York Wage Theft Prevention Act ("WTPA"), effective April 9, 2011, required Defendants to provide Plaintiffs, at the time they were hired, with a notice containing, inter alia, the rate and frequency of their pay, NYLL § 195(1), and, with each payment of wages, a written statement listing, inter alia, the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked.  NYLL § 195(3); see Perez Garcia, 2020 WL 1130765, at *10; Mondragon, 2019 WL 2551536, at *12.  As of February 27, 2015, violations of Section 195(1) result in damages of $50 per workday, up to a maximum of $5,000, and violations of Section 195(3) result in damages of $250 per workday, up to a maximum of $5,000.  NYLL §§ 198(1-b, 1-d).  See Perez Garcia, 2020 WL 1130765, at *10.

Here, Plaintiffs allege that they did not receive wage statements as required under WTPA § 195(1); they do not contend that Defendants violated § 195(3).  (ECF No. 1 ¶¶ 46–47, 118–19 (alleging violation of "NYLL § 195(1)" and seeking damages of "$50 per day for every week in which the violation occurred")).  By their default, Defendants have admitted these violations, see Rovio Entm't, Ltd., 97 F. Supp. 3d at 545, and accordingly, Plaintiffs are entitled to damages of $50 per day, up to the statutory maximum of $5,000.  See NYLL § 198(1-b).

### 6. **Prejudgment interest**

"Under the FLSA, prejudgment interest is not available where liquidated damages have been awarded." Perez Garcia, 2020 WL 1130765, at *11 (citing Mondragon, 2019 WL 2551536, at *11). Under New York law, a plaintiff may recover both liquidated damages and prejudgment interest, see NYLL § 198(1)(a), because the former are considered punitive, while the latter "compensate[s] a plaintiff for the loss of use of money." Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999). "[P]rejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages." Xochimitl, 2016 WL 4704917, at *18 (internal citation omitted).

Under New York law, the simple interest rate is 9% per annum, N.Y. C.P.L.R. § 5004, and is computed "on a simple interest basis." Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998). For damages that "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); see Marfia, 147 F.3d at 91 (noting courts' discretion to calculate prejudgment interest based on the "date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation"). "The midpoint of the plaintiff's employment is often used as the date from which to calculate prejudgment interest in wage-and-hour cases." Perez Garcia, 2020 WL 1130765, at *11.

The Court elects that approach here. Agureyev's employment lasted 34 days (from April 10 to May 15, 2015) (ECF No. 1 ¶ 22), and therefore, the midpoint of her employment was April 27, 2015 (883 days before the Complaint was filed on September 26, 2017), or 2.42 years. Igamberdiev's employment lasted 156 days (from April 1 to September 4, 2015) (ECF No. 75-2 at

4–5), and therefore, the midpoint of her employment was June 18, 2015 (831 days before the Complaint was filed), or 2.28 years.  The Court will use these durations to calculate the amount of prejudgment interest to be awarded to each Plaintiff.  See Perez Garcia, 2020 WL 1130765, at *11.

### 7.  Calculating damages

#### a.  Agureyev

Applying the standards set forth above, the Court finds that Agureyev worked a total of 158.5 straight-time (minimum wage) hours, and 12.5 overtime hours.  (ECF No. 75-2 at 3).  Of the 34 calendar days over which her employment lasted, she worked 21 days, on only one of which did she work more than ten (10) hours.  (Id.)  Accordingly, the Court calculates Agureyev's damages as follows:

| | Minimum Wage | Over-time | Spread-of-hours | WTPA | Liquidated Damages | Prejudgment Interest | Total |
|---|---|---|---|---|---|---|---|
| Equation | 158.5*8.75 | 12.5*13.125 | 1*8.75 | 21*50 | 1386.88+164.06+ 8.75 | 2.42*1559.69*0.09 | x |
| Total | $1386.88 | $164.06 | $8.75 | $1,050.00 | $1,559.69 | $339.58 | $4,508.96 |

#### b.  Igamberdiev

Applying the standards set forth above, the Court finds that Igamberdiev worked a total of 473.76 straight-time (minimum wage) hours, and zero overtime hours.  (ECF No. 75-2 at 4–5). Of the 156 calendar days over which her employment lasted, she worked 58 workdays, on four (4) of which she worked over ten (10) hours.  (Id.)  Accordingly, the Court calculates Igamberdiev's damages as follows:

|  | Minimum Wage | Over-time | Spread-of-hours | WTPA | Liquidated Damages | Prejudgment Interest | Total |
|---|---|---|---|---|---|---|---|
| Equation | 473.76*8.75 | 0 | 4*8.75 | 58*50 | 4145.40+35 | 2.28*4180.40*0.09 | |
| Total | $4,145.40 | $0 | $35 | $2,900 | $4,180.40 | $856.58 | **$12,117.38** |

### E.  Attorneys' Fees

Plaintiffs request an award of $29,533.75 for attorneys' fees in this action.  (ECF No. 75-2 at 12).  Both the FLSA and the NYLL permit a successful plaintiff to recover reasonable attorneys' fees.  See 29 U.S.C. § 216(b); NYLL §§ 198, 663.  To determine the "presumptively reasonable fee," the Court multiplies the hours counsel reasonably spent on the litigation by a reasonable hourly rate.  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  "The presumptively reasonable fee boils down to what a reasonable paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (internal citations omitted).

#### 1.  Reasonable Hourly Rate

Three attorneys and one paralegal represented Plaintiffs in this action, and request hourly rates as follows:  (1) Christopher Van De Water - $350.00; (2) Matthew Madzelan - $225.00; (3) John Luke, Jr. - $450.00; and (4) Mehwish Ahmed - $150.00.  (ECF No. 75-2 at 6–12).[3]

To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to "apply the prevailing rate within the district for similar services by lawyers of

---

[3] Plaintiffs' attorneys' fees submission also includes entries for "Unassigned – Staff."  (ECF No. 75-2 at 6–8).  Given the absence of description of who this individual is, the Court finds that a "reasonable paying client" would not be willing to pay for these entries and excludes them from its calculation of the award of attorneys' fees.  See Simmons, 575 F.3d at 174.

comparable experience and skill." Galeana, 120 F. Supp. 3d at 323 (citing Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).  A court may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the 'undesirability' of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983)).

In this district, courts generally award experienced wage-and-hour attorneys between $300 and $400 per hour.  See Surdu v. Madison Global, LLC, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more decades of experience); see also Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced litigators in wage-and-hour cases in this district); but see Williams v. Epic Sec. Corp., No. 15 Civ. 05610 (SDA), 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-wage-and-hour experience).

Plaintiffs have provided the Court with no information about the background and experience of the attorneys for whom they seek an award of fees.  (See ECF Nos. 75, 75-1, 75-2 at 6–12).  From the time entry descriptions, the Court infers that Van De Water and Luke were

23

partners on the matter, Madzelan a junior associate, and Ahmed a paralegal.  Based on the little information that Plaintiffs have presented, the Court finds that the requested hourly rate of $450 for Luke is "at the high end of what courts in this district typically grant."  See Smith v. Digit. Soc. Retail Inc., No. 18 Civ. 6602 (RA), 2019 WL 5450397, at *3 (S.D.N.Y. Oct. 24, 2019).  Instead, the Court finds that a reasonable hourly rate for Luke is the same as Van De Water's, $350.  See Lopez, 2020 WL 915821, at *13 (awarding $350 hourly rate to experienced wage-and-hour attorney and collecting cases).  The Court finds that this reduction is particularly appropriate in this case, from which is absent any novel or complex legal or factual questions and in which Defendants have defaulted.  See Perez Garcia, 2020 WL 1130765, at *12 (reducing attorneys' hourly rates where defendants had defaulted); Xochimitl, 2016 WL 4704917, at *20 (same).  Accordingly, the Court finds that an hourly rate of $350 is reasonable for Luke and Van De Water.

Plaintiffs seek an hourly rate of $225 for Madzelan, the associate on this matter.  (ECF No. 75-2 at 10).  Other courts in this district have also deemed $175 to be a reasonable hourly rate for associates in wage-and-hour cases.  See Perez Garcia, 2020 WL 1130765, at *12 (reducing hourly rate for junior associate from $250 to $175); Montes, 2019 WL 4392516, at *2 (same); De La Cruz v. Trejo Liquors, Inc., No. 16 Civ. 4382 (VSB) (DF), 2019 WL 9573763, at *18 (S.D.N.Y. Sept. 10, 2019) (noting that courts in this District typically approve hourly rates of $125 to $200 for junior associates in wage-and-hour cases).  The Court therefore finds that $175 is a reasonable hourly rate for Madzelan in this case.

Plaintiffs request an hourly rate of $150 for Ahmed.  (ECF No. 75-2 at 12).  Hourly rates for paralegals of $100 to $150 per hour are typical for awards in this District.  See Williams v. Metro-North R.R. Co., No. 17 Civ. 3847 (JGK), 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018);

24

Tatum v. City of New York, No. 06 Civ. 4290 (PGG) (GWG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) (finding that $125 was reasonable rate for paralegals).  Accordingly, the Court applies an hourly rate of $125 to Ahmed.

### 2. **Reasonable Hours Expended**

To determine the reasonable number of hours required by a case, the critical inquiry is "whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly."  Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016), adopted by 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (quoting Hensley, 461 U.S. at 434); see LCS Grp. LLC v. Shire LLC, 383 F. Supp. 3d 274, 281 (S.D.N.Y. 2019) ("A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees."); Tatum, 2010 WL 334975, at *6 (a court will exclude hours that were not "reasonably expended" (quoting Hensley, 461 U.S. at 434)).

Courts are alert for several categories of potentially unreasonable hours billed.  First, "[p]laintiffs cannot recover for time spent by attorneys completing administrative tasks."  Chiangxing Li, 2017 WL 892611, at *20 (collecting cases).  Second, a court "may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did."  Id. (collecting cases in which courts reduced fees for overly vague or duplicative entries).

25

Third, courts may reduce fees "where the hours billed are disproportionate to the quantity or quality of the attorneys' work." Id. at *21 (collecting cases in which courts reduced fees where attorneys' work was mediocre or did not reflect complicated analysis).

Plaintiffs have provided the Court with contemporaneous billing records of their counsel, including hours expended, dates of work, and brief descriptions of the tasks performed. (ECF No. 75-2 at 6–13). These billing records generally reflect reasonable tasks that appear to have been performed within a reasonable amount of time, with a few exceptions. For example, the attorneys on this matter recorded time entries for matters that could have been done at a lower rate by a law clerk or secretary, such as several entries reflecting that attorneys sent or received emails or other documents. (ECF No. 75-2 at 7 ("sent out" letter; "sent email")). In addition, some entries "contain vague or perfunctory explanations of the work performed," Rosso v. Pi Mgmt. Assocs., L.L.C., No. 02 Civ. 1702 (KNF), 2006 WL 1227671, at *4 (S.D.N.Y. May 3, 2006), which impedes the Court's review of the value of the hours recorded. (See ECF No. 75-2 at 7 ("Rvw'd previous emails with D atty"; "Various emails with opposing counsel")). The Court does note, however, that the attorneys appropriately recorded their travel time at reduced rates, and thus, no additional reduction is required with respect to travel time. (ECF No. 75-2 at 10–11 (travel time billed at one-half rate)). See Murphy v. Lajaunie, No. 13 Civ. 6503 (RJS) (SN), 2018 WL 7968908, at *13 (S.D.N.Y. Feb. 2, 2018) (applying 50% reduction to attorney travel time); Adusumelli v. Steiner, No. 08 Civ. 6932 (JMF), 2013 WL 1285260, at *5 (S.D.N.Y. Mar. 28, 2013) (noting that "courts in the Second Circuit 'regularly reduce attorneys' fees by 50 percent for travel time'") (quoting LV v. New York City Dept. of Educ., 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010)).

To bring the hours expended into a reasonable range, "[c]ourts in this District have applied percentage reductions of up to fifty percent." Williams, 2018 WL 3370678, at *12; see, e.g., Alicea v. City of New York, 272 F. Supp. 3d 603, 612 (S.D.N.Y. 2017) (applying 50% reduction for excessive and unjustified billing); Auto. Club of N.Y., Inc. v. Dykstra, No. 04 Civ. 2576 (SHS), 2010 WL 3529235, at *3–4 (S.D.N.Y. Aug. 24, 2010) (applying 10% across-the-board reduction in hours to address three types of unjustified time). The number of hours expended in this case, just over 100 (ECF No. 75-2 at 12), for a two-plaintiff case that involved Defendants' default and three brief, in-person court conferences and one settlement conference, also appears high. See Estrada v. Giovanni's Italian Pizzeria, Inc., No. 16 Civ. 6162 (PGG) (GWG), 2020 WL 3166964, at *8 (S.D.N.Y. June 15, 2020) (finding 35.6 hours "on the high end of expected hours" for a default FLSA case); Cocoletzi v. Fat Sal's Pizza II, Corp., No. 15 Civ. 02696 (CM) (DF), 2019 WL 92456, at *24 (S.D.N.Y. Jan. 3, 2019), adopted by 2019 WL 5727472 (S.D.N.Y. Jan. 7, 2019) (noting that 118.45 hours "seems, on its face, to be quite high for a default case"); Rodriguez v. Heinchon Marcus Distrib., LLC, 16 Civ. 1447 (VB) (PED), 2016 WL 7489067 at *9 (S.D.N.Y. Nov. 10, 2016), adopted by 2016 WL 7477559 (S.D.N.Y. Dec. 28, 2016) (finding 39.4 billable hours reasonable in a FLSA default judgment case).

In light of these factors, the Court finds that a reduction of 15% is appropriate. See Douglas v. Anthem Prods., LLC, No. 18 Civ. 5789 (GWG), 2020 WL 2631496, at *6 (S.D.N.Y. May 26, 2020) (applying 15% reduction to hours billed in FLSA action); Custodio v. Am. Chain Link & Const., Inc., No. 08 Civ. 7148 (GBD) (HBP), 2014 WL 116147, at *16 (S.D.N.Y. Jan. 13, 2014) (same); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) (same); Rosso, 2006 WL 1227671, at *4 (same). This adjustment brings the number of attorney hours

here closer to awards that other courts have granted in similar cases.  See Douglas, 2020 WL 2631496, at *6 (76 hours); Rodriguez, 2016 WL 7489067, at *9 (39.4 hours).

Applying the reasonable rates set forth above and the 15% reduction to the number of hours, the Court awards Plaintiffs attorneys' fees in the total amount of $19,280, calculated as follows:

| Timekeeper | Requested Rate | Approved Rate | Requested Hours | Hours Reduced by 15% | Approved Total |
|------------|----------------|---------------|-----------------|----------------------|----------------|
| Van DeWater, C | $350 | $350 | 12.6 | 10.7 | $3,745 |
| Madzelan, M. | $225 | $175 | 73.4 | 62.4 | $10,920 |
| Luke, J. | $450 | $350 | 14 | 11.9 | $4,165 |
| Ahmed, M | $150 | $125 | 4.2 | 3.6 | $450 |
| | | | Total: | 79.4 | $19,280 |

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is GRANTED and Plaintiffs are awarded judgment against Defendants in the total amount of $35,906.34, comprised of the following:

(1) Agureyev is awarded damages in the amount of $4,508.96, comprised of (i) $1,386.88 in unpaid minimum wages; (ii) $164.06 in unpaid overtime wages; (iii) $8.75 in unpaid spread-of-hours wages; (iv) $1,559.69 in liquidated damages; (v) $1,050.00 in statutory damages, and (vi) $339.58 in prejudgment interest;

(2) Igamberediev is awarded damages in the amount of $12,117.38, comprised of (i) $4,145.40 in unpaid minimum wages; (ii) $35.00 in unpaid spread-of-hours wages; (iii) $4,180.40 in liquidated damages; (iv) $2,900.00 in statutory damages, and (v) $856.58 in prejudgment interest; and

(3) $19,280 in attorneys' fees.

Plaintiffs' claims against Defendant Khondokar are DISMISSED WITH PREJUDICE.   The

Clerk of the Court is respectfully directed to close ECF No. 75.

Dated:          New York, New York
                March 5, 2021

                                        SO ORDERED.

                                        _____

                                        SARAH L. CAVE
                                        United States Magistrate Judge